```
                    United States District Court
                      District of Massachusetts
 _____
                               )
ANDREW GORBEY, by and through  )
his mother and next friend,    )
SHERRI MADDOX, and KEENAN      )
STAPLETON, by and through his  )   Civil Action No.
mother and next friend, FELICIA)   11-11259-NMG
CLARK,                         )
         Plaintiffs,           )
                               )
         v.                    )
                               )
AMERICAN JOURNAL OF OBSTETRICS )
AND GYNECOLOGY, ELSEVIER, INC.,)
THE BOND CLINIC, HENRY LERNER, )
M.D. and EVA SALAMON, M.D.,    )
         DefendantX.           )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiffs Andrew Gorbey ("Gorbey"), by and through his mother and next friend, Sherri Maddox, and Keenan Stapleton ("Stapleton"), by and though his mother and next friend, Felicia Clark, bring suit under the Massachusetts Consumer Protection Act, M.G.L. c. 93A ("Chapter 93A") against defendants American Journal of Obstetrics & Gynecology, Elsevier, Inc. ("Elsevier"), The Bond Clinic and Doctors Eva Salamon ("Dr. Salamon") and Henry Lerner ("Dr. Lerner").

Currently before the Court are three separate motions to dismiss and a motion to amend the complaint.

## I. Background

This action is brought by two minors, Gorbey and Stapleton, who suffered permanent brachial plexus injuries at birth. By way of background, brachial plexus injury occurs when the brachial plexus, the network of nerves that sends signals from the spine to the shoulder, arm and hand, becomes stretched or torn. A newborn may suffer a loss of sensation or movement in the arm, hand and fingers or, in the most serious cases, paralysis of the arm. The injury is commonly believed to result from the delivering physician's use of too much traction, that is, pulling too hard on the baby during delivery. Too much traction is often applied in births involving shoulder dystocia where the baby's shoulder gets caught on the mother's pubic symphysis. In such a situation, a delivering physician must apply various maneuvers to disengage the baby's shoulder and facilitate delivery. Damage to the upper brachial plexus nerves may result if the physician pulls too hard on the baby's head while the shoulder is engaged. In more serious cases, the tension may physically tear out the nerve roots from the neonatal spinal column, resulting in total dysfunction.

This case arises from an allegedly fraudulent article on the topic which was co-authored by Drs. Lerner and Salamon ("the Lerner-Salamon article"). The article appeared in a March, 2008 issue of the American Journal of Obstetrics & Gynecology, a

medical journal published by Elsevier.  Dr. Salamon is an obstetrician practicing medicine at the Bond Clinic in Winter Haven, Florida, and Dr. Lerner is an obstetrician practicing medicine in Newton, Massachusetts.

The Lerner-Salamon article, titled "Permanent Brachial Plexus Injury Following Vaginal Delivery Without Physician Traction or Shoulder Dystocia", is a case study of a delivery performed by Dr. Salamon in Florida.  The subject newborn is reported to have suffered permanent brachial plexus injury at birth following a vaginal delivery which did not involve either shoulder dystocia or physician traction.  On the basis of that case study, the article concluded that, contrary to conventional medical belief, not all brachial plexus injury is caused by physician traction.  Specifically, it reported that it was "the first unambiguous case report" demonstrating that permanent brachial plexus injury could result without physician traction or shoulder dystocia.

Plaintiffs here both suffered permanent brachial plexus injuries at births characterized by shoulder dystocia.  In 2009, each pursued medical malpractice actions against their delivering physicians, Gorbey in Virginia and Stapleton in Illinois, and each lost at trial.  In both cases, the defendant-physicians maintained that the injury was caused not by physician-applied traction but by the natural force of uterine contractions on the

baby's body when the shoulder became engaged. The defendant-physicians both introduced into evidence the Lerner-Salamon article, presumably to support the argument that brachial plexus injury can be sustained in the absence of excessive traction.

Plaintiffs now bring suit in this Court, alleging that the Lerner-Salamon article is inaccurate, false and misleading insofar as it does not accurately report what happened during the subject delivery.[1] The article's description of the delivery is alleged to contradict hospital records authored by Dr. Salamon concerning the subject birth and deposition testimony Dr. Salamon and Dr. Lerner provided during the ensuing medical malpractice litigation. Plaintiffs assert that 1) Dr. Lerner wrote his portion of the article without reviewing the pertinent labor and delivery notes and 2) Elsevier was informed of the contradictory evidence shortly after the article was published but refused to retract the article or to issue a clarifying statement.

Plaintiffs aver that the defendants' acts of writing, submitting for publication, publishing and failing to retract the Lerner-Salamon article constitute unfair or deceptive acts or practices under Chapter 93A. They contend that, but for the use of that article by the defense in their respective medical

---

[1] The delivery was, in fact, the subject of a medical malpractice suit against Dr. Salamon in which it was alleged that she had used excessive traction and caused the newborn's injuries. That case was settled before trial.

malpractice actions, they would have been successful at trial. They therefore seek 1) to recover the amounts they were unjustly deprived of at trial ($3 million each) and 2) to obtain an order prohibiting use of the Lerner-Salamon article in future litigation proceedings.

All defendants move to dismiss the complaint for failure to state a claim. Defendants Salamon and The Bond Clinic also move to dismiss for lack of personal jurisdiction. Plaintiffs have opposed the motions to dismiss and have also moved to amend their complaint to add a claim for fraud. Defendants oppose the motion to amend as futile. Although the Court allowed plaintiffs' motion for an extension of time to respond to defendants' oppositions to the motion to amend, plaintiffs have not filed a response.

The Court convened a scheduling conference in the matter in November, 2011 but declined to set pretrial deadlines in light of the pending motions to dismiss. Instead, the Court heard oral argument of counsel and took the matter under advisement.

**II. <u>Analysis</u>**

    **A. Motions to Dismiss**

        **1. Legal Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp.</u> v.

Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken.  Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).  Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied.  See Nollet, 83 F. Supp. 2d at 208.

Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Threadbare recitals of the legal elements which are supported by mere conclusory statements do not suffice to state a cause of action.  Id.  Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of anything more than the mere possibility of misconduct.  Id. at 1950.

## 2. Application

Each defendant contends, among other reasons for dismissal, that the complaint fails to state a claim under Chapter 93A because plaintiffs have not demonstrated a causal relationship between the defendants' allegedly unfair or deceptive acts and the plaintiffs' claimed injury. The Court agrees and will dismiss the complaint.

Chapter 93A provides a cause of action to any person who has been injured by another person's use or employment of any unfair or deceptive method, act or practice. M.G.L. c. 93A, §§ 2, 9(1). A successful claim requires a showing of 1) a deceptive act or practice on the part of the defendant, 2) an injury or loss suffered by the plaintiff and 3) a causal connection between the defendant's deceptive act or practice and the plaintiff's injury. Tyler v. Michaels Stores, Inc., No. 11-10920, 2012 WL 32208, at *8 (D. Mass. Jan. 6, 2012) (citing Hershenow v. Enter. Rent-A-Car Co., 445 Mass. 790, 797 (2006)).

The Massachusetts Supreme Judicial Court has affirmed that "causation is a required element of a successful [Chapter] 93A claim." Aspinall v. Philip Morris Co., Inc., 442 Mass. 381, 401 (2004). To prove causation requires a plaintiff "to prove that the defendant's unfair or deceptive act caused an adverse consequence or loss." Rhodes v. AIG Domestic Claims, Inc., 461 Mass. 486, 496 (2012); see also Smith v. Jenkins, No. 07-12067,

2011 WL 4793227, at *1 (D. Mass. Oct. 11, 2011) (stating that a Chapter 93A plaintiff must show "that a defendant's deceptive conduct caused him some appreciable loss or injury"); Casavant v. Norwegian Cruise Line Ltd., 460 Mass. 500, 503 (2011) (stating that a Chapter 93A plaintiff must show "a causal connection between the deception and the loss").

Here, plaintiffs contend that the act of publishing a fraudulent medical article in a reputable medical journal has caused them harm by depriving them from receiving damages in their respective medical malpractice cases. In other words, because defendants made the article available to the public, the defendant-delivering physicians were able to rely on it and avoid adverse verdicts in the medical malpractice actions brought against them.

To establish the causation element under such a theory would require the complaint to provide, at the very least, some facts from which the Court could reasonably infer that the Lerner-Salamon article was material to the juries' verdicts. Varney v. R.J. Reynolds Tobacco Co., 118 F. Supp. 2d 63, 67 (D. Mass. 2000) (stating that to survive a motion to dismiss, a complaint "must allege facts that sufficiently support, either directly or by inference, every material element necessary to sustain recovery"). Plaintiffs' allegations pertinent to causation are that: 1) each defendant-physician "introduced, used, and relied

upon" the Lerner-Salamon article at trial, 2) generally, defendants in medical malpractice suits have relied upon and will continue relying upon the article, 3) "but for the use of the deceptive article in the principle case of the defense", plaintiffs would have been successful at trial and 4) as a result, each plaintiff has been damaged in the amount of $3,000,000.

The only fact contained in those allegations is that defense counsel introduced and used the subject article at the medical malpractice trials.[2] That fact does not support a reasonable inference of materiality but instead establishes a mere possibility of materiality. In the absence of any factual content concerning, <u>inter alia</u>, how the article was used, what testimony concerning the article was offered or what other evidence was admitted, the mere fact of the admission of the article into evidence is insufficient to render the complaint plausible on its face. <u>Iqbal</u>, 129 S. Ct. at 1949-50 (stating that the plausibility standard is not met where factual allegations are "merely consistent with" or present nothing more than "a sheer possibility" of defendant's liability). Moreover, even that possibility is undercut by the countervailing fact that, on appeal of the jury verdict in Stapleton's malpractice

---

[2] The allegation that defense counsel "relied" on the report is an unsupported conclusion not entitled to an assumption of truth.

suit, the Appellate Court of Illinois determined that the admission of the Lerner-Salamon article had not prejudiced him. See Stapleton ex rel. Clark v. Moore, 932 N.E.2d 487, 501 (Ill. App. Ct. 1st Dist. 2010).

In sum, plaintiffs' complaint fails to state a cause of action under Chapter 93A with respect to any of the defendants because it does not connect the claimed injury to an alleged deceptive or unfair act. The Court will therefore allow the defendants' motions to dismiss.

### B. Motion to Amend

Plaintiffs have moved to amend their complaint to add a count for fraud. To establish a cause of action for fraud, plaintiffs must show

> that the defendants made a false representation of material fact, with knowledge of its falsity, for the purpose of inducing the plaintiffs to act on this representation, that the plaintiffs reasonably relied on the representation as true, and that they acted upon it to their damage.

Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 471 (2009).

Plaintiffs here do not allege that they relied or acted upon any alleged misrepresentation but rather that third parties so relied and acted which, in turn, resulted in plaintiffs' injury. Plaintiffs point to no case, however, and the Court has found none, in support of a theory that third-party reliance on fraud is cognizable under Massachusetts law. In any event, the

question is academic because, as discussed above, the allegations do not give rise to an inference of reliance, reasonable or otherwise, on the part of the jury which resulted in plaintiffs' loss. Because the amended complaint would therefore fail to state a claim for fraud, the motion to amend is denied as futile. <u>Abraham</u> v. <u>Woods Hole Oceanographic Inst.</u>, 553 F.3d 114, 117 (1st Cir. 2009) (motion to amend may be denied if "the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim" (internal quotation omitted)).

### ORDER

In accordance with the foregoing,

1) the motions to dismiss filed by Elsevier (Docket No. 11), Salamon and The Bond Clinic (Docket No. 19) and Lerner (Docket No. 27) are all **ALLOWED;** and

2) plaintiffs' First Motion to Amend (Docket No. 36) is **DENIED.**

**So ordered.**

                                        /s/ Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge

Dated March 16, 2012